Argued and submitted January 31, affirmed December 9, 1992, reconsideration denied February 24, petition for review denied March 23, 1993 (315 Or 644)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN MELVIN KOESTER,
*Appellant.*

## (CR90-0480; CA A68846)

843 P2d 968

Mary M. Reese, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., dissenting.

## DEITS, J.

Defendant was charged with unlawful possession of a firearm. ORS 166.250. He appeals the trial court's denial of his motion to suppress a gun taken from his car after he was stopped by the police. We affirm.

At about 10:35 a.m. on June 12, 1990, Oregon State Police Officer Lewis and his partner were involved in a traffic stop on Interstate 5 south of Salem. Another motorist who was southbound on I-5 stopped and reported to them that a person driving a silver-gray Honda had pointed a pistol at him, just north of Salem on I-5. He told the officers that the person was a white male and was alone in the car. He gave them the license number and said that he thought that the car was now about three miles south of their present location. The motorist did not identify himself, and the officers did not ask his name or note the license number of his car. He told them that he would follow them and would stop if they found the car.

The officers immediately drove south on I-5 at speeds of 85 to 90 miles per hour. As they were driving, they reported the situation to the Oregon State Police dispatcher. They were told that the registered owner of the car had a Corvallis address. The Benton County sheriff's office was also told what had occurred. Lewis and his partner did not locate the car. However, in response to the police bulletin, Deputy Sheriff Downing drove to the address of the registered owner. As he approached the residence, he saw a Honda matching the description and license number driving away. He stopped the car at 11:09 a.m. and called for the assistance of another officer.

Downing got out of his car, drew his gun and pointed it at the Honda. He told the driver, a white male who appeared to be alone, to turn off the car and to put both of his arms out of the window. When another officer arrived a few minutes later, Downing told defendant to get out of the car. He then frisked him, had him kneel on the pavement and handcuffed him. He told defendant that he was not under arrest but that he was handcuffed for their mutual protection. He told defendant of his *Miranda* rights and had him sit in the back seat of his patrol car. He also told him why he had been stopped and

asked if there was a gun in the Honda. Defendant said that there was a gun under the front seat. Downing asked if he could search the car, and defendant consented. He found a loaded pistol under the seat. He then told defendant that he was under arrest.

■ Defendant assigns error to the trial court's denial of his motion to suppress the gun. He argues that Downing arrested him by handcuffing him, advising him of his *Miranda* rights and putting him in the back seat of the patrol car. He contends that the arrest was unlawful because, at that time, Downing lacked probable cause to believe that he had committed a crime.

Under ORS 133.005(1), "arrest" means "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." The question here is whether Downing's actions constituted an arrest. The state contends that his actions were taken for safety purposes as a part of the stop of defendant and that defendant was not arrested until after the gun was discovered in the car. However, any immediate safety concerns dissipated after Downing had defendant get out of the car, frisked him and found no weapon. The other officer was available to watch the car and defendant was fully cooperative. We conclude that defendant was arrested when he was handcuffed and placed in the patrol car. *See State v. Morgan*, 106 Or App 138, 806 P2d 713, *rev den* 312 Or 235 (1991).

■ The next question is whether, at the time of the arrest, there was probable cause to believe that defendant had committed a crime. ORS 133.310(1). Probable cause exists if there is a substantial objective basis for believing that it is more likely than not that the person has committed an offense. ORS 131.005(11). In addition to an objective basis, the arresting officer must have a subjective belief that the person has committed an offense. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986).

Defendant contends that, at the time of his arrest, there was no substantial objective basis for believing that there was probable cause to arrest him. He argues that, because the pursuit and arrest were based on information

provided by an unnamed informant, the question of whether the facts constituted an objective basis for the officers reasonably to believe that a crime had been committed or that defendant had committed it should be analyzed under the *Aguilar/Spinelli* test[1] and that neither the informant's veracity nor the reliability of the information was sufficiently established.

■     Although the *Aguilar/Spinelli* test has been codified in ORS 133.545 and governs determinations of the sufficiency of an affidavit for a search warrant based on information supplied by unnamed informants, we have not used it to determine the sufficiency of an unnamed informant's tip in situations not involving a warrant. As we explained in *State v. Vanness*, 99 Or App 120, 123, 781 P2d 391 (1989):

> "[T]here is no set formula to determine when an unidentified informant's tip gives rise to a reasonable suspicion that a person has committed a crime. Rather, that determination rests on the particular circumstances in each case, because informant tips vary greatly in their value and reliability."[2]

In evaluating an unidentified citizen's tip, the veracity, reliability and basis of knowledge of the citizen are factors that are relevant, but those factors are not determinative and should be considered only under the totality of the circumstances.

■     The citizen informant had purportedly been the victim of a crime. As the trial court found, "Although the officer did not identify [the informant], the informant knowingly subjected himself to being identified." In view of the potential danger of the situation and the need for immediate action, the officers spent little time discussing the matter with him but immediately took off after the car. The motorist agreed to follow them and stop if the car was found. Nothing suggests that the citizen had any other motive than to report the crime and to prevent danger to other drivers. The circumstances suggest that the motorist's report was worthy of belief. He

---

[1] *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 637 (1964); *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).

[2] Although *Vanness* involved the question of whether there was a reasonable suspicion to support a stop, its analysis regarding the reliability of informant's tips is pertinent to cases involving the question of whether there is probable cause for an arrest.

made his report on the basis of personal observation and provided a detailed description of the driver, the car, the incident, the time and the location. In addition, the car that Downing stopped in Corvallis matched the reported car in color, model and license number. As reported, it was being driven by a white male who was alone. The car was found at a time and location consistent with its having been on the freeway at the time and place of the reported incident. As the trial court found:

> "The approximate driving time between the estimated location of the gun pointing incident and the place of the stop is 40 to 45 minutes. The incident is estimated by trooper Lewis to have occurred at about 10:35 a.m., 39 minutes before the stop at 11:09 a.m."

Considering the totality of the circumstances, at the time of defendant's arrest there was a substantial objective basis for believing that he had committed a crime.

■■ Defendant also argues that, at the time of his arrest, Downing lacked a subjective belief that he had committed a crime. Defendant recognizes that an arresting officer's subjective belief may be based on the determination of other officers, if the arresting officer subjectively believes that the other officers have probable cause. *State v. Pratt*, 309 Or 205, 216, 785 P2d 350 (1990). He contends, however, that the dispatcher's report could not have provided a basis for Downing to believe that other officers had probable cause, because the request was only that the driver of the Honda be stopped and not that he be arrested. However, the content of a police bulletin is not necessarily determinative of whether the police had a subjective belief that a crime had been committed. It may reasonably be inferred from Downing's knowledge that the car that he stopped and its occupant matched the description in the reported incident and from his manner of confronting defendant, handcuffing him and advising him of his *Miranda* rights that Downing did have a subjective belief that defendant had committed a crime.

Defendant also argues that Downing could not have had a subjective belief at the time of the arrest, because he told him that he was not placing him under arrest when he put him in the patrol car. However, that does not conclusively establish that Downing did not believe that he had probable

cause to arrest defendant. There may have been other reasons for his delay in arresting, *e.g.*, he may have wanted to investigate the situation further before making the arrest. This is not a case like *State v. Morgan, supra*, where the officer testified that he did *not* believe that he had probable cause to make the arrest. Specific testimony that an officer believed that there was probable cause is not always required if a subjective belief reasonably may be inferred from the circumstances. Given the information that Downing had and his actions, a subjective belief that he believed that there was probable cause that defendant had committed a crime may be inferred.

■     We conclude that, under the totality of circumstances, there was probable cause to arrest defendant. The search of the car was proper under the automobile exception. *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986). The trial court properly denied defendant's motion to suppress.

Affirmed.

**DURHAM, J.,** dissenting.

I disagree with the majority's decision to "reasonably infer" that the arresting officer subjectively believed that a crime had been committed by defendant from the officer's confronting, handcuffing and advising him of his *Miranda* rights. Under *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), the subjective component of probable cause to arrest is focused on the arresting officer's subjective belief at the time that he acts, not what a fictive reasonable officer could have believed:

> "Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. Neither is the test whether the officer articulates to the suspect the basis for a second ground for arrest. What is required is that the officer formulates

such a basis to himself at the time he acts." (Emphasis in original.)

In this case, the officer's behavior does not prove that the officer subjectively believed that defendant was subject to seizure for committing a crime. The officer testified that he told defendant that he was not placing him under arrest. *See State v. Morgan*, 106 Or App 138, 142, 806 P2d 713, *rev den* 312 Or 235 (1991). The state makes no argument that that erroneous statement was designed to fulfill a law enforcement objective, such as calming an agitated suspect. On this record, the officer's testimony is meaningless if the officer in fact believed that he could arrest defendant. The majority points out that the officer might have had reasons other than his lack of a subjective belief that he had probable cause when he delayed arresting defendant. That might be true, but it does not relieve the state of its burden to establish that the officer had a subjective belief that defendant had committed a crime. The majority's analysis disregards the state's burden to show that "the officer formulates such a basis to himself at the time he acts." *State v. Owens*, 302 Or at 204. We cannot ignore that requirement. The arrest was unlawful, because the subjective component required for probable cause was not established.

Defendant's consent to a search immediately followed the illegal arrest. He was incorrectly told that he was not under arrest, yet he was handcuffed and placed in the patrol car. No circumstance intervened to attenuate the taint of the illegal arrest. The state has not shown that defendant gave consent voluntarily and did not simply acquiesce in the officer's assertion of authority over him. On similar facts, *State v. Bea*, 107 Or App 118, 122, 810 P2d 1328 (1991), and *State v. Morgan, supra*, 106 Or App at 143, required suppression of the evidence seized. I would follow those cases.

I dissent.