85 F.3d 632
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James G. HITCHCOCK, Defendant-Appellant.
 No. 95-3822.
 United States Court of Appeals, Seventh Circuit.
 Argued April 10, 1996.
Decided May 8, 1996.
 
 Before POSNER, Chief Judge, CUMMINGS and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 James Hitchcock pleaded guilty to possession of a shotgun under 18 inches in length and possession of two destructive devices, commonly known as "pipebombs," all in violation of 26 U.S.C. § 5861(d). He challenges his conviction for those offenses on the ground that he was subjected to a search that violated the Fourth Amendment. He also challenges the district court's determination that two of his prior convictions were not "related cases" for the purposes of sentencing. We affirm Hitchcock's conviction as well as his sentence.
 
 I.
 
 2
 The following facts are not in dispute. On October 12, 1994, Hitchcock was moving from Oregon to Pennsylvania, carrying all of his belongings behind his car in a rented trailer. While in Steuben County, Indiana, Hitchcock's car began to emit smoke and he was pulled over by Indiana State Trooper Andrew Smith ("A. Smith"). Hitchcock told A. Smith that a seal was broken in his car's engine and that he would fix the problem when he purchased the needed parts. A. Smith told Hitchcock that he would issue him only a warning ticket and asked for Hitchcock's driver's license. Hitchcock informed A. Smith that he had left his license in Oregon and presented an Alaska check-cashing card for identification. A. Smith then asked Hitchcock for the vehicle's registration. Hitchcock went to the rear of the vehicle to retrieve the registration and removed a briefcase. When Hitchcock opened the briefcase, A. Smith saw a small pipe in plain view. He inquired about the pipe and Hitchcock informed him that the pipe was used to smoke marijuana, but that he hadn't done so in over four months. A. Smith then asked if he could search the briefcase further and Hitchcock agreed. He found three more pipes in the briefcase, all containing marijuana residue.
 
 
 3
 At this point, A. Smith and Hitchcock differ in their versions of what occurred. According to A. Smith, Hitchcock informed him that "there's no dope in the car," and agreed to let A. Smith search it. Hitchcock claims, however, that A. Smith told him he was going to search the car regardless of his consent and that Hitchcock directly told him "No you do not have my permission to search it." Prior to beginning the search, A. Smith told Hitchcock that it was generally his policy to have another Trooper present for searches and he called Trooper Charles Smith ("C. Smith"), who arrived shortly. According to both C. Smith and A. Smith, Hitchcock again expressed his consent to the search and stated, "There's no dope in the vehicle, [but] if you got to get in the trailer, there is a shotgun in the trailer." The search of the car revealed a small switchblade knife, an Oregon driver's license of another individual, and two small pipebombs.
 
 
 4
 When the pipebombs were discovered, Hitchcock was handcuffed, arrested, and taken to a nearby Toll Plaza to meet with Trooper Nix, an Indiana State Trooper familiar with explosives. Here A. Smith informed Hitchcock of his Miranda rights and Hitchcock stated that he understood them. Trooper Nix then asked Hitchcock about the contents of the pipebombs. Nix then became "agitated" and commented that he refused to be "blown up," and that he was therefore going to have Mr. Hitchcock take the bombs out of the vehicle--at gun point if needed. He also stated that if Hitchcock did anything funny, he would shoot him. A. Smith testified that he then asked Hitchcock if they could search the trailer and that Hitchcock gave his permission. Hitchcock testified that he did not consent and that when he asked if a warrant was necessary, Nix told him that the Troopers could do whatever they wanted at that point. The search of the trailer revealed a shotgun with its barrel sawed off.
 
 
 5
 Hitchcock claims that while he was unloading the trailer he was surrounded by eight officers and that A. Smith and Nix had their guns pointed at him. A. Smith testified that he was the only officer with his gun out of its holster, but stated that it was pointed at the ground the entire time. C. Smith testified that the only law enforcement personnel at the scene at the time of the search were himself, A. Smith, and Trooper Nix. Special agent Robert Hausken of the Bureau of Alcohol, Tobacco, and Firearms arrived at the Toll Plaza after the searches were completed. He testified that he questioned Hitchcock regarding the pipe bombs and the sawed-off shotgun, that Hitchcock was very friendly and cooperative, and that Hitchcock made no mention of guns pointed at him or of being threatened in order to gain his consent to search the vehicles.
 
 
 6
 Hitchcock was charged with possession of a shotgun under 18 inches in length and possession of two destructive devices, all in violation of 26 U.S.C. § 5861(d). After the district court denied his motion to suppress the evidence obtained in the searches, Hitchcock pleaded guilty to the charges.
 
 II.
 
 7
 Hitchcock contends that the district court should have granted his motion to suppress evidence of the shotgun and pipebombs because the searches disclosing those items violated the Fourth Amendment. The Fourth Amendment protects a person's right to be free from warrantless searches of his property. See, e.g., Payton v. New York, 445 U.S. 573, 586. However, it is well settled that authorities may conduct a search without a warrant if they obtain the voluntary consent of the individual whose property is to be searched. Schneckloth v. Bustamonte, 412 U.S. 218, 222. The district court determined that Hitchcock voluntarily consented to the searches of his vehicle and trailer, and we will not overturn that determination in the absence of clear error. United States v. Price, 54 F.3d 342, 345 (7th Cir.1995).
 
 
 8
 In determining whether voluntary consent was given for a search, courts look to the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557; United States v. McGuire, 957 F.2d 310, 314 (7th Cir.1992). Factors to consider include "age, education, and intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody." United States v. Kozinski, 16 F.3d 795, 810 (7th Cir.1994). The district court considered each of the above factors: Hitchcock was 34 years old, a high school graduate, and reasonably intelligent; he had been read his Miranda rights prior to the search of the trailer, but not prior to the search of the vehicle; he had been detained only a short time before being asked to consent to the searches; there were no repeated requests for consent and no physical coercion. [Order dated May 12, 1995, p. 9]. Unfortunately, there was conflicting testimony regarding whether Hitchcock actually consented.[1] In such situations, a court must determine the credibility of each witness and reach a conclusion on whether consent was voluntarily given. Kozinski, 16 F.3d at 810. Here the district court did not find Hitchcock's allegations to be credible. It instead believed the consent testimony of A. Smith, which was corroborated by Agent Hausken's testimony regarding Hitchcock's friendly cooperative demeanor. Given that the district court had the opportunity to hear the actual testimony and to observe the demeanor of the witnesses, its determination is entitled to substantial deference. United States v. Dickerson, 975 F.2d 1245, 1249 (7th Cir.1992), certiorari denied, 507 U.S. 932. The district court's conclusion that Hitchcock voluntarily consented to the searches of his vehicle and trailer was not clearly erroneous.
 
 III.
 
 9
 In March 1989, Hitchcock was charged in Oregon with possession of a controlled substance and carrying a concealed weapon. On November 2, 1989, under a separate cause number, Hitchcock was charged with felony failure to appear in the action for the controlled substance and concealed weapon. On July 18, 1990, Hitchcock pleaded guilty to both carrying a concealed weapon and failing to appear. His sentences for both were continued and he was placed on 24 months of probation.
 
 
 10
 Hitchcock argues that the above convictions were "related offenses" for purposes of Section 4A1.2(a)(2) of the Sentencing Guidelines, which states, "Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." U.S.S.G. § 4A1.2(a)(2). If he is correct, then the sentence imposed by the district court below was too long. Application Note 3 to Section 4A1.2 reads as follows:
 
 
 11
 Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense.) Otherwise, prior sentences are considered related if they resulted from offenses that ... (3) were consolidated for trial or sentencing.
 
 
 12
 Hitchcock contends that the offenses were related because they were consolidated for sentencing. Whether Hitchcock's assertion is true is unclear: there was no formal order of consolidation, but the sentencing in both cases did occur before the same judge, and on the same day. However, because Hitchcock's offenses were separated by an intervening arrest, whether the cases were consolidated for sentencing is irrelevant.
 
 
 13
 Hitchcock contends that in light of our discussion in United States v. Joseph, 50 F.3d 401, 402-403 (7th Cir.1995), we cannot find an intervening arrest here because the government did not introduce direct evidence that Hitchcock was actually arrested in connection with his concealed weapon offense. However, Hitchcock's reading of Joseph is incorrect. In Joseph, we stated only that we would not equate the issuance of a criminal charge with an arrest in a situation where it was certain that the defendant was never taken into custody (the defendant had been in prison during the entire time between both offenses). Id. at 403. In no way did we limit the acceptable methods of proving an "intervening arrest" to the introduction of an actual arrest report. Here, Hitchcock's presentence report indicates that he was "taken into custody" on the concealed weapon charge. This was sufficient to prove that he was "arrested." See Or.Rev.Stat. § 133.005(1) (defining "arrest" as "the taking of a person into custody so that he may be held to answer for a crime."); State v. Morgan, 106 Or.App. 138, 141, 806 P.2d 713, 714 (1991) (holding that a person taken into custody by being placed in a police car was "arrested"); State v. Koester, 117 Or.App. 139, 142, 843 P.2d 968, 970 (1992) (same). Thus the cases were not "related" for purposes of Section 4A1.2 and Hitchcock was properly sentenced.
 
 
 14
 Judgment Affirmed.
 
 
 
 [1]
 Hitchcock notes that the conflicting testimony problem could have been avoided had the Indiana State Troopers required Hitchcock to sign a "Permission to Search" form--a form that is often used by Indiana law officers--and that the failure to use the form in his case is evidence of his non-consent. While such forms do make it easier for courts to determine whether consent was given, a verbal consent remains just as valid as a written one. See, e.g., United States v. Willis, 61 F.3d 526, 530 (7th Cir.1995) (allowing verbal consent to a search)