Argued and submitted July 29, affirmed December 9, 1998

# STATE OF OREGON,
*Appellant,*

*v.*

# GERALD NORMAN SOLDAHL,
*Respondent.*

## (96-1257; CA A96217)

972 P2d 898

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Diane L. Alessi, Interim Public Defender, argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

The state appeals from a pretrial order suppressing evidence in a prosecution for driving while revoked. ORS 811.182. The essential issue is whether, under the "collective knowledge" doctrine, the officer who stopped defendant's car had probable cause to believe that defendant had committed a traffic infraction. ORS 810.410(3)(b). We affirm.

The material facts are undisputed: In the fall of 1995, Clackamas County Sheriff's Deputy Gil Millette learned that Leo Harland and Shannon Kashuba were wanted on felony arrest warrants. At that time, a source told Millette that Harland and Kashuba were "staying with a friend in Portland" and "kind of hiding out from the police." Millette knew that defendant claimed to be a close friend of Harland; indeed, when defendant had been arrested on drug charges in 1995, he claimed that the drugs found in his car belonged to Harland.

In January 1996, Kashuba contacted Millette on his digital pager. The phone number Kashuba provided corresponded to the phone at defendant's apartment. Based on that information and the connection between Harland and defendant, Millette deduced that Harland and Kashuba might be staying with defendant and defendant's girlfriend at their apartment in southeast Portland.

On February 22, 1996, Millette was on plain-clothes duty observing defendant's apartment.[1] Parked in front of the complex was a white Cougar registered to Tracy Zick, defendant's girlfriend. Millette saw two people get into the Cougar and leave the apartment complex, although he could not tell from which unit they had come. Millette could not identify the individuals and was not even sure whether they were male or female. As the car drove by him, Millette tried to identify the driver and passenger but, because the Cougar's windows were "so heavily tinted," he could determine only that the "passenger appeared to be female" and that the "driver appeared to be male."

---

[1] At that time Millette was on loan to Portland Police Bureau.

Millette followed the car. It headed south on Highway 99E into Clackamas County and then onto Highway 224 toward Estacada where Kashuba's father lived. Millette twice pulled alongside the Cougar but, because of the tinted windows, could not tell whether either Harland or Kashuba was inside. However, Millette suspected that Harland or Kashuba, or both, were in the Cougar, and he believed that, based on that suspicion, the car could be stopped. ORS 131.615(1). He also believed that, because of the Cougar's tinted windows, there was probable cause to stop the car for a traffic infraction. ORS 815.220.[2] However, because he was concerned that he would "blow" his surveillance if the stop failed to produce either Harland or Kashuba, Millette radioed the Clackamas County Sheriff's dispatcher and requested that another officer make the stop. An unidentified state trooper volunteered to make the stop.[3] In speaking with the dispatcher and the trooper, the sole reason Millette gave for the stop was that there were "possible wanted people in the car." Millette did not refer to the Cougar's tinted windows.

After the trooper stopped the car, Millette pulled up behind. When Millette realized that the driver was defendant, not Harland, he questioned defendant and learned that Harland and Kashuba were, in fact, still at defendant's apartment.

___

[2] ORS 815.220 provides, in part:

"(1) A person commits the offense of obstruction of vehicle windows if the person drives or moves on any highway * * * any vehicle with windows obstructed in a manner prohibited under this section.

"(2) The windows of a vehicle are obstructed in a manner prohibited by this section if any material that prohibits or impairs the ability to see into or out of the vehicle is upon any vehicle window described in this subsection. This subsection applies to any sign, poster, one-way glass, adhesive film, glaze application or other material if the material prohibits or impairs the ability to see into or out of the vehicle. This subsection only applies to the following windows of the vehicle:

"* * * * *

"(c) The side windows on either side forward of or adjacent to the operator's seat.

"* * * * *

"(6) The offense described in this section, obstruction of vehicle windows, is a Class D traffic infraction."

[3] The state trooper's identity is not disclosed in this record.

Millette then convinced defendant to assist him in coaxing Harland out of the apartment so that he could make the arrest. During a subsequent conversation, as defendant returned to his apartment, defendant told Millette that his driver's license had been revoked. Notwithstanding defendant's cooperation in Harland's and Kashuba's arrests, he was subsequently charged with driving while revoked, ORS 811.182.

Defendant filed a motion to suppress "all statements made by defendant and all evidence gathered as a result" of the traffic stop made by the state trooper and requested by Millette. Defendant asserted, *inter alia*, that (1) Millette's belief that either Harland or Kashuba might be in the Cougar did not rise to the level of reasonable suspicion; and (2) even if Millette had probable cause with respect to a traffic infraction (the tinted windows), the "collective knowledge" doctrine was not implicated because Millette never referred to the tinted windows in his communications with the dispatcher and the trooper. Millette was the only witness at the suppression hearing; the trooper never testified.

The trial court granted suppression, observing:

"In fact, as I understand his testimony, he couldn't tell if they [Harland and Kashuba] were in the car. And so he continued to follow the car and tried several times to identify the driver or passenger. * * * [B]ecause of that, I don't find that there's reasonable suspicion there. He just knows somebody's in the car. I don't know how you could claim that's reasonable suspicion.

"* * * * *

"I'm finding that the officer, the unknown trooper * * * did not have probable cause to believe that an infraction had occurred, and I do this on the basis of Officer Millette's testimony that he did not communicate to him any information about a traffic infraction."

The court subsequently rendered written findings:

"Deputy Millett[e] did not have a reasonable suspicion to believe that the two individuals in the car were the ones for whom he [ ] had felony warrants for their arrest, and;

"The unidentified State Trooper who actually stopped the car which defendant was driving did not have probable cause to believe that a traffic infraction was being committed."

■      On appeal, the state challenges both of those determinations. With respect to the first, the state asserts that Millette had a reasonable suspicion that either Harland or Kashuba was in the Cougar and that, under the "collective knowledge" doctrine, Millette's belief was a sufficient basis for the stop. Assuming without deciding that, under the "collective knowledge" doctrine, Millette's knowledge could be imputed to the trooper who actually made the stop, we agree with the trial court that Millette's knowledge did not support a reasonable suspicion.

An officer has a reasonable suspicion if the officer is "able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime." *State v. Ehly,* 317 Or 66, 80, 854 P2d 421 (1993). Here, Millette's knowledge at the time he directed the stop was: (1) defendant claimed to be a friend of Harland; (2) four or five months earlier, a "source" had told him that Harland and Kashuba were staying with a "friend in Portland"; (3) within the previous month, Kashuba had called Millette from defendant's apartment; and (4) two unidentified people got into defendant's girlfriend's car and drove on a highway in the direction of a town where a member of Kashuba's family lived. Given the staleness of Millette's information, and his complete inability to identify any physical attributes of the persons in the Cougar, the mere fact that two people left defendant's apartment and drove on a highway that led not only to Estacada, but also to dozens of other places, was insufficient to support the requisite "reasonable inference" that either Harland or Kashuba was in the Cougar.

■      We proceed to the state's alternative contention that the stop was lawful because there was probable cause for a traffic violation, *viz.,* the Cougar's tinted windows. *See* ORS 810.410 (traffic stop authorized based on probable cause of traffic infraction). Defendant does not dispute that *Millette* had both objective and subjective probable cause with respect to the traffic infraction. However, defendant emphasizes, the

unidentified trooper, not Millette, made the stop—and the trooper never testified. The state responds that, under the "collective knowledge" doctrine, Millette's knowledge is properly imputed to the trooper.

■   In *State v. Pratt,* 309 Or 205, 216, 785 P2d 350 (1990), the court articulated the "collective knowledge" doctrine:

> "A peace officer who does not himself have probable cause to arrest a felony suspect nonetheless may arrest the suspect if he *reasonably* believes that the officer or officers who have requested the arrest do have probable cause to make that arrest and if probable cause to arrest does, in fact, exist." *Id.* at 216 (emphasis in original).

An essential element of the "collective knowledge" analysis is that the officer who actually makes the arrest—or, in the case of traffic infractions, the stop—must have *subjective* probable cause. That is, the officer who makes the arrest or traffic stop must *"subjectively believe"* that the requesting officer had sufficient grounds for the arrest or stop. *State v. Koester,* 117 Or App 139, 144, 843 P2d 968 (1992), *rev den* 315 Or 644 (1993) (emphasis added).

Here, the trial court did not make an express finding as to the trooper's subjective belief. However, necessarily implicit in the court's conclusion that the trooper lacked probable cause is a determination that the state failed to prove that the trooper subjectively believed that Millette had probable cause with respect to the traffic infraction. That determination was correct. Indeed, the state offered no proof pertaining to the trooper's subjective belief. As noted, the trooper did not testify, and it is undisputed that Millette, in communicating with the dispatcher and the trooper, never mentioned the tinted windows. Rather, Millette referred only to "possible wanted people in the car," and there is no evidence that the trooper stopped the Cougar for any other reason. Those circumstances amply support a determination that the trooper lacked the requisite "subjective belief." *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). The trial court did not err.

Affirmed.