Argued and submitted March 7, the decision of the Court of Appeals reversed, the order of the circuit court reversed, and the case remanded to the circuit court for further proceedings December 21, 2000

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# GERALD NORMAN SOLDAHL,
*Respondent on Review.*

## (CC 96-1257; CA A96217; SC S46243)

15 P3d 564

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Deputy Public Defender, Salem, argued the cause for respondent on review. With her on the brief was David E. Groom, Public Defender.

LEESON, J.

## LEESON, J.

In this criminal proceeding, the issue is whether the trial court erred in granting defendant's motion to suppress evidence obtained after a police officer stopped defendant's car. The trial court held that, because the officer who stopped defendant lacked probable cause to believe that defendant was committing a traffic infraction, the evidence must be suppressed. The Court of Appeals affirmed. *State v. Soldahl,* 157 Or App 578, 972 P2d 898 (1998). We allowed the state's petition for review. For the reasons that follow, we reverse the decision of the Court of Appeals, reverse the order of the trial court, and remand the case to the trial court for further proceedings.

The material facts are not in dispute. On February 22, 1996, Clackamas County Deputy Sheriff Millette was on duty wearing plain clothes while he conducted surveillance of the apartment where defendant and his girlfriend lived. Millette was watching defendant's apartment, because he believed that Harland and Kashuba, who were wanted on felony arrest warrants, were in the apartment hiding from police. Eventually, Millette observed two people drive away from the apartment in a car that was registered to defendant's girlfriend. Millette did not see the two people well enough to identify them when they entered the car, but he believed that they might be Harland and Kashuba. He followed the car in an unmarked police car.

In an attempt to verify whether Harland and Kashuba were in the car, Millette pulled even with the driver-side window. The tint on the window was so dark that Millette could not see who was inside. Millette knew that the tinted driver-side window furnished probable cause to stop the car for a traffic infraction. ORS 815.220;[1]

---

[1] ORS 815.220 provides, in part:

"(1) A person commits the offense of obstruction of vehicle windows if the person drives or moves on any highway or owns and causes or knowingly permits to be driven or moved on any highway any vehicle with windows obstructed in a manner prohibited under this section.

"(2) The windows of a vehicle are obstructed in a manner prohibited by this section if any material that prohibits or impairs the ability to see into or out of the vehicle is upon any vehicle window described in this subsection. * * * This subsection only applies to the following windows of the vehicle:

ORS 810.410(3)(b) (1995).[2]

Because Millette was concerned that he might compromise his surveillance if he stopped the car himself, he called the police dispatcher to request that some other officer make the stop. An unidentified state trooper heard Millette's request and volunteered to stop the car, because he was closer to it than any other Clackamas County police officer. Millette did not tell the trooper that the tinted window provided the basis for the stop. Rather, he stated that there were "possible wanted people in the car."

After the trooper stopped defendant's car, Millette stopped his car behind the trooper's car. At that point, Millette realized that the driver was defendant, not Harland. Millette engaged defendant in conversation and persuaded defendant to assist him in coaxing Harland and Kashuba out of defendant's apartment so that Millette could arrest them. During a subsequent conversation with defendant as defendant was returning to his apartment, defendant told Millette that his driver license had been revoked. Thereafter, defendant was indicted for felony driving while revoked. ORS 811.182 (1995).

---

"* * * * *

"(c) The side windows on either side forward of or adjacent to the operator's seat."

[2] ORS 810.410 (1995) provides, in part:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

In *State v. Matthews*, 320 Or 398, 401, 884 P2d 1224 (1994), this court explained that ORS 810.410(3)(b)

"states the *purpose* for which an officer may detain a person, *i.e.*, for investigation, identification, and citation concerning a traffic infraction. However, the statute is silent on the question of the level of information about the traffic infraction that the officer must possess in order to effect a lawful stop."

(Emphasis in original.) The court held that an officer must have probable cause under Article I, section 9, of the Oregon Constitution, to believe that a traffic infraction has occurred before executing a traffic stop under ORS 810.410(3)(b). *Id.* at 402-03. Thus, although ORS 810.410(3)(b) does not contain a probable cause requirement, this court has held that the Oregon Constitution requires an officer to have probable cause before making a stop for a traffic infraction.

Before trial, defendant moved to suppress

"all statements made by defendant and all evidence gathered as a result of [the traffic] stop on the grounds * * * that the stop was [made] without reasonable suspicion to believe a crime had been committed and without probable cause to believe an infraction had occurred[.]"

Defendant relied on ORS 131.615 (1995) for his argument that the trooper did not have reasonable suspicion to believe that a crime had been committed, and Article I, sections 9 and 12, of the Oregon Constitution, for his argument that the trooper lacked probable cause to believe that a traffic infraction had occurred.[3] The state opposed defendant's motion. It argued that Millette had probable cause to stop the car because he had observed the unlawful tint in the window of defendant's car. Accordingly, it contended, under the "collective knowledge" doctrine, Millette could ask the trooper to stop the car. Under that doctrine, the state argued, so long as *any* officer involved in requesting or making a stop for a traffic infraction has probable cause, the stop is valid. Defendant responded that the collective knowledge doctrine required Millette to communicate to the trooper the basis for the stop so that the trooper himself could form subjective probable cause. Because Millette did not tell the trooper that the tinted window provided the basis for the stop, defendant concluded, the trooper did not have probable cause to stop defendant's car.

In colloquy with counsel on defendant's motion to suppress, the trial court explained that, in its view, Millette

---

[3] ORS 131.615 (1995) provides, in part:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Article I, section 12, provides:

"No person shall be put in jeopardy twice for the same offence (sic), nor be compelled in any criminal prosecution to testify against himself."

did not have reasonable suspicion to believe that Harland and Kashuba were in the car.[4] The trial court then identified ORS 810.410(3)(b) and this court's decision in *State v. Matthews*, 320 Or 398, 884 P2d 1224 (1994), as providing the proper framework for analyzing whether the trooper had probable cause to stop the car. According to the trial court, this court's holding in *Matthews*—that a stop for a traffic infraction under ORS 810.410(3)(b) requires probable cause—means that the officer who makes the stop must have subjective probable cause to believe that an infraction has occurred. The trial court reasoned that the trooper who made the stop did not have probable cause to believe that a traffic infraction had occurred, because Millette had not told the trooper about the traffic infraction. The trial court therefore granted defendant's motion to suppress.

The Court of Appeals affirmed. *Soldahl*, 157 Or App at 584. That court reasoned that an essential element of the collective knowledge doctrine is that an officer who makes a stop for a traffic infraction must *himself or herself* " 'subjectively believe'* that the requesting officer had sufficient grounds for the arrest or stop." *Id.* (citing *State v. Koester*, 117 Or App 139, 144, 843 P2d 968 (1992)) (emphasis in original). The Court of Appeals faulted the state for not offering evidence of the trooper's subjective belief at the hearing on defendant's motion to suppress, and Millette for not telling the trooper that the tinted window provided the basis for the stop. The Court of Appeals held that, because there was no evidence that the trooper subjectively believed that he had probable cause to stop defendant's car for the traffic infraction, the stop was invalid. *Id.* We allowed the state's petition for review to determine whether, under the collective knowledge doctrine, the trooper had authority to stop defendant's car.

■    ORS 810.410(3)(b) (1995) provides that a police officer may stop and detain a person for a traffic infraction. As noted, this court has held that, under Article I, section 9, an officer must have probable cause to believe that a traffic infraction has occurred. *Matthews*, 320 Or at 402-03. In *State*

---

[4] The Court of Appeals agreed, *Soldahl*, 157 Or App at 583, and that issue is not before this court.

*v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), this court held that probable cause has both a subjective and an objective component:

> "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances."

Whether an officer had subjective probable cause may be inferred from the officer's conduct if no evidence provides a contrary explanation for that conduct. *State v. Belt*, 325 Or 6, 11-12, 932 P2d 1177 (1997).

In this case, defendant concedes that *Millette* had both subjective and objective probable cause to stop defendant's car for the traffic infraction of driving with tinted windows. The issue is whether Millette had to communicate his knowledge to the *trooper* so that the trooper also could form a subjective belief that there was probable cause to stop defendant's car for the traffic infraction. As noted, the Court of Appeals held that the collective knowledge doctrine required Millette to do so. *Soldahl*, 157 Or App at 584. In our view, the Court of Appeals misunderstood the collective knowledge doctrine, which also is known as the fellow-officer rule. We turn to an explanation of that doctrine, which was discussed most recently in *State v. Pratt*, 309 Or 205, 785 P2d 350 (1990).

In *Pratt*, the defendant operated a long-haul trucking company, North Star Trucking. One of North Star's employees was murdered, triggering a police investigation. While the officers were at North Star's office, the defendant called. The officers told the defendant about the murder, and the defendant told them that he was on his way to Phoenix and would be returning in a few days. The defendant also described his truck. Subsequently, Oregon officers sent a request by teletype to Arizona police officers asking them to arrest the defendant and to seize his truck. An Arizona officer did so. *Id.* at 215.

The defendant moved to suppress all evidence, arguing that " '[t]here was simply inadequate evidence that [the arresting officer in Arizona] had a reasonable belief [that] the

Oregon officers had information sufficient to establish probable cause.'" *Id.* at 216. This court affirmed the trial court's denial of defendant's motion. *Id.* at 217. It explained that the Arizona officers reasonably had relied on the teletype message:

> "A peace officer *who does not himself have probable cause to arrest* a felony suspect nonetheless may arrest the suspect *if he reasonably believes that the officer or officers who have requested the arrest do have probable cause* to make that arrest and if probable cause to arrest does, in fact, exist."

*Id.* at 216 (emphasis in original omitted; emphasis added). The court held that police officers reasonably may rely on messages from fellow officers. *Id.* at 217.

■ The collective knowledge doctrine focuses on the shared knowledge of the police as a unit rather than merely on the knowledge of the officer who acts. The doctrine therefore permits a police officer to act if the officer reasonably relies on instructions from an officer who has probable cause. As this court explained in *State v. Groda*, 285 Or 321, 324, 591 P2d 1354 (1979):

> "[T]he searching officer personally must have information which constitutes probable cause, *or the searching officer must be directed to make the search by an officer who personally has that knowledge.*"

(Emphasis added.) *Pratt* did not modify the collective knowledge doctrine, as explained in *Groda*, to require officers who act at the direction of fellow officers to form independent subjective probable cause. However, *Pratt* did identify the rationale for the collective knowledge doctrine:

> "Officers must be able to rely on such messages from fellow officers elsewhere in order to counteract the high degree of mobility criminals enjoy in this society. To hold otherwise would either prevent emergency requests for assistance, or would require that such requests contain long evidentiary summaries which each individual officer then would have to evaluate for probable cause, perhaps while driving down a highway following a suspect."

309 Or at 217 (footnote omitted).

*Pratt* involved application of the collective knowledge doctrine to an arrest. *Groda* applied the doctrine to a search. If an officer reasonably may rely on a fellow officer's direction to arrest or to search, then it follows that an officer reasonably may rely on a fellow officer's direction to stop a vehicle for a traffic infraction.

The collective knowledge doctrine in no way undermines the probable cause requirement. The doctrine merely views law enforcement agencies as a unit. As a unit, officers may direct one another to carry out lawful police activities. However, the state retains the obligation at trial to establish that police action was initiated by an officer who had both objective and subjective probable cause.

We turn to the facts in this case. Millette testified that he subjectively believed that he had probable cause to stop defendant's car. His objective basis for that belief was his observation of the tinted window in defendant's car. As noted, defendant concedes that Millette had probable cause to stop his car.[5] Rather than making the stop himself, however, Millette requested that another officer make it for him. Consistent with this court's holdings in *Pratt* and *Groda*, we hold that, under the collective knowledge doctrine, the trooper who responded to Millette's request lawfully stopped defendant's car, because he reasonably acted at the request of an officer who had probable cause to believe that a traffic infraction had occurred. The trial court erred in granting defendant's motion to suppress.

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[5] Defendant asserts that Millette nonetheless might have lacked authority to stop defendant's car because he was not in uniform. ORS 810.400 provides that any police officer attempting to enforce Oregon's traffic laws "shall be in uniform or shall conspicuously display an official identification card showing the officer's lawful authority." However, as the trial court noted, the relevant inquiry is whether the *trooper* lawfully could stop the car, not whether ORS 810.400 prevented Millette from making the stop.